Everything he came across and he never stumbled upon. And then when he fell on his face, I found the box that he was holding It was the box motherboard. And then I went there and picked up an Apple Earth� and stood there like this and I looked down at the switch looked at the measures and I picked up the circuit board and the circuit board came up. He wouldn't let go, he let go! So, I took the box, I did three things I opened the switch I opened the switch and the board came down And asked me whether I could improve up. Ugh, Mr. Lucey? Lucey. Yes, Your Honor. Feel free to proceed.  The board erred in two respects. remembrance, reference, and discription presented within the one year specified by section 135. The board erred in denying Pioneer's motion because Monsanto did not present in that time period any claim that satisfied the statutory requirements. The board's second error relates to its decision to alter Pioneer's priority claim. Monsanto did not carry its burden of demonstrating that Pioneer's priority application fails to disclose an enabled species within the scope of the count. As to Monsanto's prior claims and the motion relating to it, Monsanto's proposed reading of section 135 would vitiate the repose that the statute provides and provide little protection of a patentee's property right. Section 135 places limits on a patentee's vulnerability to having its claims placed into an interference. Let me ask you about those statutory vulnerabilities. I mean, you make several claims, several arguments in your briefs. One is that A means A in the singular and can't mean more than that, correct? In certain contexts, Your Honor, yes. OK, but I think you have a fallback position in light of Corbett and the other cases. So you're suggesting that they can't. I think you've conceded in a way, maybe I'm wrong, that you can do some sort of grouping. It's just that certain groupings are permissible and certain are not. Am I wrong about that? Well, in a way, Your Honor, the respect in which A can mean multiple claims is that if there happen to be multiple claims in the early filed application that correspond to the later claim, then that's that's a permissible situation. So in that context, a claim could mean more than one. But the analysis that's performed is a claim to claim analysis. So there might be two claims in the earlier file that can correspond to a later claim. But each of those claims individually have to be compared to one another. I'm not sure I follow. If you come back to your multiple claims, I mean, take, for example, the the Monsanto 700 Claim 1. And what what Monsanto is trying to do is to find in its 983 application the 1, 2, 3, 4, 5 limitations that are in Claim 1. Right. Yes, Your Honor. Now, if the and in terms of finding those about three of them, at least are literal, almost the same, right? Very close, Your Honor. Yes. So if if if there had been literal or as close to that or as literal, if in the 983 application, say, for example, if claims, you know, 13, 16 and 18 hadn't been in there, but there had been a pure recitation of what I'll call step B or in the plant subsequent generation, you wouldn't be here, right? Well, it depends how that claim, how that language was presented, Your Honor. If that claim was presented, if that language was presented in a claim that wasn't related to the other features, I believe we would be here. Well, are are the steps A, B, C and D of the 700 Claim 1, are they satisfied by 1, 7, 8, 9 in the application? I believe that A, B and C are satisfied by 1, 7 and 8, Your Honor. Claim 9 differs a bit in that while it depends from Claim 1, there's no association of the element recited in Claim 9 with the elements recited, for example, in Claim 7 and 8. So that's that's the first potential rub is on 9 and whether it has the requisite affinity and association. Correct, Your Honor. Yes, that's one rub. Now, there isn't any case law on affinity of affiliation, is there? Or, but those cases don't talk about that. I believe that's correct, Your Honor. Those cases do not talk about that. So that's a question of new law. Guided by the statute, Your Honor. Yes. If we decide that the, and I don't mean this in a pejorative way, it's already been a patent language way, but I'm not a patent lawyer. In your pristine view of the affinity has to be pure. If we were to disagree with you, then 9 would qualify to match up to D, right? It depends on how you characterize the relationship between those claims. But yes, Your Honor, the way you're looking at it, I believe is correct. Now, we've passed, I guess, the question of whether or not it is legitimate to sort of cobble together a count, if you will, out of a previous application. This is Corbett and whatever those cases did, and then subsequently University of California. Your Honor, if I may, because the terminology here, some of these terms can be misunderstood and misused, and they have been in this case, I believe. A count, I don't believe, I believe your use of the term count is incorrect. The count is merely a device which is used in the interference, frequently corresponds to the claims of at least one party. I believe your question would be framed in terms of cobbling together a claim, and a later applicant cobbling together a claim that somehow finds basis in a mix and match approach, assemblage of the earlier claims. So the cobbling together is something, as I'm saying, we couldn't simply say no cobbling as a panel. It depends on the nature of the cobbling, Your Honor. Well, that's what I mean. I think what you're saying is that cobbling is okay if it's according to the rules. If there's a clear association made between the pieces being cobbled together, I think that that would be in a cobbling, it would be okay in that situation. Yes. So that's the test I first started on. So that's your test. Yes, Your Honor. And that comes out of the last language of Judge Rich when Corbett does it. All four groups of the claims together does not manifest a unitary scheme or attempt to secure a property right in the subject matter. I believe he was touching on the same situation. Yes, Your Honor. Now, that was in the negative because the test wasn't met there. But out of that language, we have to decide this, what I would call the affinity issue. Yes, Your Honor. He said that those claims were not sufficiently associated with one another. And I believe the task before this court is to decide what the standard is, whether the claims here are sufficiently associated with one another. And also, if you choose to enunciate a rule. Okay, so let's take nine. We talked about nine. And that's the degree of affinity there, right? Yes, Your Honor. 13, 16, and 18 are the limitations in the 983 application that Monsanto says, read back to and wherein it's from a subsequent generation of a plant, etc. Correct, Your Honor. Now, am I wrong in thinking that the transgenic plant in one, claim one of the 983 application is probably R0, first generation, zero generation? I believe that would be characterized as the R0 generation. And that kind of looked to me like 18 is R1. Your Honor, I'd have to check the record. It may be the case that 18 is regarded as R0. Because they're claiming R2 and higher. I mean, aren't R2 and higher subsequent generations of a plant that's generated from a selected transformed cell? Yes, Your Honor. It's a subsequent progeny. Right. So, why is there an affinity, if you don't mind my continuing to use that word in connection with claim nine? Is there an affinity problem with merging up 13, 16, and 18? Or is it a different kind of a problem? It's both, Your Honor. There is a commonality between those claims and claim nine. Because these claims, like claim nine, are associated with claim one, but not with claim seven or eight. So, they have that problem in common with claim nine. There's an additional problem with these claims because of the sort of mishmash that they are. Claim 13 is directed to a seed. Not the plant of claim one. Claim 16 is directed to not the plant of claim one, but its progeny. And then... Well, the seed is a necessary element if you're ever going to have a subsequent generation of a plant head start someplace. I realize that 13 is just claiming the seed produced by R0. Right? That's going to become R1. That's correct, Your Honor. In some respects, subsequent progeny... In certain circumstances, seeds will be necessary. Yes, Your Honor. That's why it didn't seem to me that... I mean, I recognize that when they say we're talking about plant, plant, plant, and all of a sudden we talk about seed, and somehow that's relevant. It seemed to me that they were simply saying it's relevant because you got to have a seed to get something started to get a subsequent generation. All the subsequent generations come from seed from the preceding generation. Well, to get something started, that's the technology involved in this application. These things don't start from seeds. They start from genetic manipulation. That's number one. That's the transgenic plant containing the parent. Yes, Your Honor. Can I go back to the test, which is sufficient dissociation? I think those were the words we were using. I'm going to the standard of review we would apply to the board's decision in this case. I think your position is it's a question of law, and we have de novo review. If what we're saying is there's a test of sufficient dissociation, that's a smack of fact-finding and sort of deferential kind of review before the board, because that's the analysis the board made, and why shouldn't, therefore, given this test of sufficient dissociation, that be one which would give deference to the board? Well, if I may, Your Honor, by sufficient association, what I meant was dependency. The applicant has to demonstrate an arrangement of the elements as found in the claim that they're targeting, and that's most typically found in terms of interdependency, and that's the issue of Claim 1, 7, and 8 are associated with one another. All those features are associated together. Claim 9, that feature is not associated with, for example, Claim 7 or 8, and the features recited in 13 and 16 and 18 are not associated with either Claim 7, 8, or 9. So here, by sufficient association, I meant dependency, Your Honor, because otherwise we get in this problem, it's a slippery slope. It becomes a mix and match of all the features can be arranged in all possible combinations. Or because of factual issues. There may be factual issues. In this situation, I couldn't think of how that would apply, but there might be situations where the test can be met by something other than interdependency, independent and dependent claims, but that's not the situation we have here. If I may reserve my time, unless you have other questions. Thank you. Thank you. Mr. Hampson? I may have pleased the Court. Good morning, Your Honors. I think we just made significant headway and narrowed the issues, and I think we agree on the test, and the test here is Corbett. And we now have essentially a fact question, which is under the substantial. I don't think we'd all, obviously, we're not all agreeing with that. Yeah, I mean, I'm in agreement. I, you know, I think clearly the test is the Corbett test. You know, there is no, I think, I believe that we just dispatched with this claim-by-claim analysis, but the problem with the claim-by-claim analysis is it's directly contrary to the holding in Thompson. And this is exactly what the party Thompson argued in the Thompson case, and was expressly rejected by the Court. And as Judge Rich said, Judge Rich read the Thompson case as allowing a grouping for unitary, I believe the terminology used is unitary subject matter. And then you'll see that the phrase also used in, this is on the last page of the decision of Corbett. They contrast this to divergent subject matter. And I think we can learn something by looking at the claims that they consider divergent. And if you look in that case, you'll see that there are four different sets of independent claims with very distinct limitations. Your Honors, our case is very different. We were already looking at, I think it's beneficial. For example, if we look at, I believe you were already there, but a JA-7, and this is just the chart. This is the Board's decision that was comparing our claim, our claim at issue to the previous claims in question. So the issue you were discussing with Mr. Lucci is whether the subject matter is unitary. I think it very clearly is, Your Honor. Your Honors, the element A, for example, element A, first of all, is not limited to any specific generation. This includes R0 generation and every subsequent generation. Now, we have two questions that you've discussed. Why is the seed unitary to the plant? Well, the seed is just, the seed inevitably results. You said everything, you said it's all subject matter unitary. That's what you just said. Well, it's all directed to the same invention, which is encompassed in A. If you look at our specification, for example, for example, element A requires heterologous DNA, which is heritable. Now, if you look at our specification, for example, well, let's look at the 983 specification. For example, for example, at JA-380, the definition of heritable is that, well, let me just read this. By heritable, it's meant that the DNA is capable of transmission through a complete sexual cycle of a plant, i.e. pass from one plant through its amies to its progeny plants in the same manner as occurs in normal corn. So, by heritable, we are making clear that we intend to claim all generations. And that's all the element D does. All the element D does is require at least one subsequent generation, element E. So, element E, in order to define the subsequent generations, you have to define an initial generation, of course, which is, that's what the regenerated from a selected transformed cell. So, essentially, element E, and you don't even need to look at 13 and 16, but 13 and 16 are further evidence of this. Element E is doing the same exact thing as claim 18. Claim 18 requires one sexual generation. So, you don't need to look at 13 and 16? Well, I think you should look at 13 and 16. That's just further evidence. Where do we get E if I don't look at 13, 16, and 18? Well, your honor, element E, let me, I'm sorry, claim 18, let me read that. The plant of claim one, which is produced from a transgenic seed, produced from a fertile transgenic plant using crossbreeding techniques. So, consistent with the definition I just read, this requires one sexual, at least one sexual generation. That means it's at least R. The plant of claim one. Correct. So, the plant of claim one, let's assume that was R0. If we assume, it encompasses R0. That's R0. Yes. So, let's assume it encompasses R1 and everything subsequent. Let's assume it's R0. If it's R0, then the plant that's claimed in claim 18 would be at least R1. R1. Yes, your honor. Well, the difficulty is you began by talking about deference to the board, and the board really gave us very little of an analysis, right? It was quite conclusory, wouldn't you agree? I mean, it notices the contested limitation E is not the same. They just say it's similarly closely related to the idea of subsequent generations of the plant. That's the sum and substance of their analysis, right? Yes, your honor. I think part of it is, you know, when you look at this, it's very clear. There are no material differences. E is doing the exact same thing, things as 13, 16, and 18, which is just the subsequent generations. And part of this is that element A really encompasses everything that's in the rest of the elements. And if we, looking over at JA9, you can find that, and the board does, you know, the board does set forth the basis for their opinion. If you look at JA9, for example, it said that both claim, both the seat of claim 13 and the higher generations relate directly to limitation E. And then it reads. We're talking about 13 and 16, not 18. Yeah, and below that, your honor, it says claim 18, which further limits the plant of claim, the plant of 1990 claim one has limitation, and then it recites limitation. Referring to the argument that you made in your paper. Yeah. Yes, your honor, which is, which I think is exactly why. This is clearly, as the board noted, a situation like in Thompson, where the subject matter is unitary. This is a significant contrast from Corbett, where you had four different independent claims. And this situation, all we're trying to do is cover the subsequent generations, which is inherent in our very definition of heritable. So we already have heritable in element A. And all we're trying to do is get to the subsequent generation. Now, your honor, if I may address D, you talked a great length about element D. If you were to hold that element D is non-unitary, I mean, that would be directly contrary. I mean, that would be essentially a vitiation of the rule of Thompson and Corbett. You'd essentially have to overturn those cases. Those cases hold that subject matter that's unitary, pre-critical should be considered as a rule. Clearly, the subject matter is unitary. If I may, your honor, I'd like to address, there's a second motion at issue in this case that you haven't had a chance to discuss yet, which is the priority motion. And our comments on the priority motion are quite simple, your honors. This is a very easy case. Why have you to do that? Give your adversary something to say on the rebuttal. I appreciate it, your honor. Thank you. It's a very simple issue. Under any rule, much of a plaintiff's brief is devoted to the standard. The standard is irrelevant. Under any standard, including that proposed, you must disclose at least one embodiment of the count. They have not done this. They haven't described all elements of the count. And let me now explain why. If you look at JA-12, this is a copy of the board's decision. You can see that the count at issue is directed to a fertile transgenic DNA plant comprised of DNA that is not comprised of a tDNA border. You can see this last element. The problem that is fatal for Pioneer's case is that they don't have description for this. And let me direct you to the factual findings of the board. Again, this is a substantial evidence standard. If you look at JA-15, the board stated very clearly why they reached this conclusion. They could say, number one, below, Pioneer admitted that that language did not appear in their specification. Number two, Pioneer's opposition brief did not point to any basis for this limitation specification. They didn't attempt to brief the issue that this limitation is not in their specification, didn't attempt to show it their support board. And finally, Pioneer did not identify any testimony or other evidence to show that this limitation would have been understood by one of skill in the art to be necessarily present. Therefore, the board reached the conclusion that this limit, the factual conclusion, I should add, that this limitation is not present. Under any standard, including that proposed by Pioneer, they therefore lose. Briefly to discuss, just very briefly to touch on the standard. Again, this is not dispositive because under any standard proposed, they will lose. Your honors, the standard that has been used and that we proposed is the Hyatt v. Boone standard. Hyatt v. Boone very clearly states that in order to be a constructive reduction of practice, an application must comply with section 112 first paragraph. It does not, Hyatt v. Boone does not suggest that there's a lesser standard in the case of interference priority. Hyatt v. Boone was, of course, interference priority case. And Hyatt v. Boone was recently relied by this court in the Cadell case. Unambiguously requires support for the full scope. Again, this doesn't matter for this case to the extent there's any error. It would be in Pioneer's favor because if you look at the board's decision, in fact, they used the narrower standard. And I think this evidence is, if you look at the decisions of the board, the board does appear to use a narrow standard. Of course, the decisions of this court are binding on the board and not vice versa. If we look at the holding, for example, the board concluded that on this record, it's more likely that the 1988 application did not provide a description of an embodiment. An embodiment, so they're requiring only one embodiment. And we've unambiguously shown that an element of the count is not present and that's fatal under any standard. And therefore, therefore, the board's ruling should be affirmed. Your Honors.  Thank you, Your Honors. Your Honors, I'd like to address that last issue first, the one about new matter. It's a red herring. The idea that we somehow had to have language in our specification corresponding to that found in the count is simply incorrect. What we had to have was an example of something which satisfied that negative T-DNA border. There was no requirement for us to explicitly state that it was there. It only had to be there. It's an anticipation standard that applies in this case. And all we had to show was a constructive reduction to practice of something that didn't have the T-DNA border, that satisfied the T-DNA border limitation. There's no factual dispute that the example we had satisfied that limitation by not- Where is that example in the record? Yes, it is, Your Honor. Where? The example's in the record. It's examples four and nine in our 999 patent. There's a discussion about this examples four and nine. So, this whole idea of having the language precisely that way is a red herring. That was not a requirement. Now, in terms of Hyatt, that was relevant in Hyatt. And the unfortunate thing about Hyatt is it was a very unusual case that the sole support that Hyatt had for his priority claim was, in fact, a patent claim. We have experimental examples. Hyatt's sole support was a patent claim. So, it's rather unremarkable that the court looked and said, well, as to this patent claim, you don't have the requisite language because they were analyzing a patent claim. In our instance, we're not analyzing a patent claim. We're analyzing experimental examples for which there's no dispute by the movement, movement, Monsanto, that the elements are satisfied for those in our case. So, with respect to the new matter issue, that's a red herring. They misled the board. Unfortunately, the board sometimes stated the correct standard, sometimes got it wrong, made fact-finding which is irrelevant to the issues before it. And for that reason, the finding of the board should be reversed and it should be remanded for further consideration. With respect to the Section 135 issue about the presentation of claims, counsel said that we, Monsanto, in our priority application, reading from the specification, we're making it clear that certain things were encompassed. Well, Section 135 is not a notice statute. It's a statute of repose. It's not whether you put people on notice that you have sort of a potential arrangement of claims that may correspond to something that an opponent might claim. It's a statute of repose. And for that repose to have meaning, the term a claim has to mean one claim. Because if it can mean multiple claims in any potential assemblage of them, there's no protection for the property right that patentee has. Counsel also mentioned that element A encompasses all the other elements. Well, that standard of domination or encompassing was specifically rejected in Thompson. So I commend that to review. And the idea of the Claim 9 somehow vitiates Thompson and Corbett is just wrong. Thompson and Corbett do not have applicability here. They have some language that sounds like it's relevant, but the holdings of those cases, particularly Corbett, with the negative example it set, I don't believe, on the record, has relevance to our facts. So absent further questions, I thank your Honor. I thank both counsel. The case is submitted.